UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RALPH SAUNDERS                                     CIVIL ACTION

VERSUS                                                    NO. 19-11482

ROBERT WILKIE, SECRETARY, U.S.           SECTION "R" (5)
DEPT. OF VETERANS AFFAIRS, ET
AL.

## ORDER AND REASONS

Defendants, in three motions, move to dismiss plaintiff's tort claims,[1] breach of contract claim,[2] and Title VII claims[3] for lack of subject matter jurisdiction.  First, the Court finds that it lacks subject matter jurisdiction over the tort claims and grants defendants' motion.  Second, the Court finds that it lacks subject matter jurisdiction over the breach of contract claim and transfers it to the United States Court of Federal Claims.  Finally, the Court concludes that it has subject matter jurisdiction over plaintiff's Title VII claims and denies defendants' motion.

---

[1]    R. Doc. 47.
[2]    R. Doc. 50.
[3]    R. Doc. 55.

## I.    BACKGROUND

Plaintiff, Ralph Saunders, was an employee at the New Orleans office of the Department of Veterans' Affairs ("VA") until 2005.  Plaintiff alleges that he is "a fair skinned, light brown, Creole, African American, currently age 64, male," who worked as a housekeeper and painter for the VA.[4] He allegedly suffered an on-the-job injury that led to disability retirement in May 2005.[5]

While employed at the VA, plaintiff brought several equal employment opportunity ("EEO") complaints.   In October 2005, plaintiff signed a settlement agreement with the VA to resolve seven such claims.[6]   The agreement was finalized on November 9, 2005.[7]  As part of the settlement, Saunders withdrew all of his claims and agreed that he would not apply for future work with the VA.[8]   Among other terms, the VA agreed to pay $240,000.[9]   Saunders retained his right to file a claim for workers' compensation.[10]

---

[4]      *Id.* at 15-16, ¶ VIII.
[5]      R. Doc. 1 at 16, ¶ VIII.
[6]      *Id.* at 17, ¶ X; R. Doc. 55-5 at 1.
[7]      R. Doc. 1 at 17, ¶ X; R. Doc. 55-5 at 4.
[8]      R. Doc. 50-4 at 1, ¶ 1.1.
[9]      *Id.* at ¶ 2.1.
[10]      *Id.* at 1, ¶ 1.3.

From June 2005 until December 2017, plaintiff received a disability annuity from the U.S. Office of Personnel Management ("OPM").[11]  In 2017, Saunders began to inquire about alternate disability benefits.[12]   On December 5, 2017, the Department of Labor's ("DOL") Office of Workers' Compensation Programs ("OWCP") informed plaintiff that he would begin to receive benefits under the Federal Employees' Compensation Act ("FECA") in lieu of the OPM annuity.[13]  These FECA benefits, plaintiff claims, pay a significantly higher rate.[14]   The OWCP made the payment of FECA benefits retroactive to the date plaintiff's OPM annuity began.[15]

Plaintiff's complaint is primarily based on allegations that defendants intentionally transmitted false information to OPM and FECA investigators, which prevented him from receiving the higher FECA benefits earlier.[16] Specifically, plaintiff alleges that defendants at the VA incorrectly told FECA and OPM investigators that he was not "retired-disabled" but had "resigned" or "resigned in lieu of termination."[17]  According to Saunders, this prevented him from receiving the higher-value FECA benefits between 2005 and

---

[11]     R. Doc. 1 at 12, ¶ II.
[12]     *Id.*; *see also* R. Doc. 55-6 at 1.
[13]     R. Doc. 55-6 at 1.
[14]     R. Doc. 1 at 12, ¶ II.
[15]     R. Doc. 55-6 at 1.
[16]     R. Doc. 1 at 12, ¶ II.
[17]      *Id.* at 13, ¶ III.

3

2017.[18]  He alleges that these actions were discriminatory, based on his race, sex, and age, and were in retaliation for the EEO complaints he brought before his 2005 retirement.[19]

Based on these allegations, plaintiff brought a new EEO complaint to the VA's Office of Resolution Management ("ORM") on January 23, 2018.[20] The ORM dismissed the complaint[21] and, on appeal, the EEOC affirmed.[22] This suit followed.[23]  In this Court, Saunders sued the VA and three groups of individual defendants: (1) high-level administrators of the VA, Robert Wilkie, the Secretary, and Jeffrey Reeder, chief counsel at the ORM; (2) employees at the VA's New Orleans office, Cassandra Holiday, Jeanette Butler, Debbie Richard, Linda Cosey, Anthony Smith, and William Insley (collectively the "local VA defendants"); and (3) employees of the EEOC, Janet Dhillon and Carlton Hadden.[24]  He brings tort claims, a claim that the VA breached the 2005 settlement agreement, and claims for Title VII discrimination and retaliation.  The defendants ask the Court to dismiss these claims for lack of jurisdiction.

---

[18]    *Id.* at 13, ¶ III.
[19]    *Id.* at 13, 18 ¶¶ III, XI.
[20]    R. Doc. 55-6 at 7.
[21]    *Id.* at 10.
[22]    R. Doc. 55-7 at 4.
[23]    *See* R. Doc. 1.
[24]    The Court previously dismissed the EEOC defendants.  R. Doc. 51.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the Court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). Because a 12(b)(1) motion is jurisdictional, the Court considers such a motion "before addressing any attack on the merits," see *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012), in order to "prevent[] a court without jurisdiction from prematurely dismissing a case with prejudice."  *Id.* at 286-87 (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

In assessing a challenge to its subject matter jurisdiction, the Court "may dismiss . . . on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Furthermore, plaintiff has the burden of demonstrating that subject matter

jurisdiction exists. *See Celestine v. TransWood, Inc.*, 467 F. App'x 317, 318 (5th Cir. 2012) (per curiam) (citing *Ramming*, 281 F.3d at 161).

## III.   DISCUSSION

### A.   State Law Tort Claims Against Individual Defendants

First, the United States moves, under 28 U.S.C. § 2679(d)(1), to substitute itself as the proper party-defendant for the tort claims alleged against the individual defendants, to dismiss the tort claims against the individual defendants as a result of the substitution, and to dismiss the claims against the United States under Federal Rule of Civil Procedure 12(b)(1) for failure to exhaust administrative remedies.[25]

#### 1.   *Substitution and Dismissal of the Individual Defendants*

The Government argues that, in light of its certification that the individual defendants were acting within the scope of their federal employment, the United States must be substituted as a party, and the Court must dismiss the individual defendants.[26]

Under the Westfall Act, an FTCA action against the Government is the exclusive remedy "for injury or loss of property, or personal injury or death

---

[25]   R. Doc. 47.
[26]   R. Doc. 47-2 at 3-4.

arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ."  28 U.S.C. § 2679(b)(1).  Any other action for money damages "arising out of or relating to the same subject matter against the employee . . . is precluded without regard to when the act or omission occurred." *Id.*

In an action under the FTCA, if the Attorney General or his designee certifies that an employee was acting within the scope of his employment at the time of the plaintiff's injury, the action "shall be deemed an action against the United States . . . , and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1).  In this case, the civil chief of the United States Attorney's Office for the Eastern District of Louisiana certified that the defendants were acting within the scope of their employment at the time of the conduct alleged in the complaint.[27]  *See* 28 C.F.R. 15.4(a) and Justice Manual § 4-5.630.

Although a certification that an employee's conduct was within the scope of his employment is subject to *de novo* judicial review, *Palmer v. Flaggman*, 93 F.3d 196, 198-99 (5th Cir. 1996); *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995) (en banc) (citing *Gutierrez de Martinez v.*

---

[27]     R. Doc. 47-3 at 1.

*Lamagno*, 515 U.S. 417, 420 (1995)), the plaintiff bears the burden of demonstrating that the employee's conduct was not within the scope of employment. *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019) (quoting *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995)). To rebut the Government's certification, plaintiff must allege "specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Id.* (quoting *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013)). Plaintiff has no right to even "limited discovery," absent allegations sufficient to rebut the Government's certification. *Id.*

Plaintiff concedes that defendants Wilkie and Reeder were acting within the scope of their employment when the alleged tortious acts occurred.[28] But, he maintains that the local VA defendants committed tortious acts outside the scope of their federal employment.[29] He argues that the Court should set aside the United States' certification under the Westfall act and allow the tort claims to proceed against these individuals.

Whether a federal employee acted within the scope of his employment is determined by the law of the state in which the allegedly tortious conduct

---

[28] R. Doc. 62 at 2. Plaintiff also concedes that defendants Janet Dhillon and Carlton Hadden were acting within the scope of their employment. The Court has already dismissed these defendants. *See* R. Doc. 51.
[29] *Id.*

8

occurred. *White v. United States*, 419 F. App'x 439, 442 (5th Cir. 2011).  In Louisiana, an employee's tortious conduct occurs within the scope of his employment if it is "so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *LeBrane v. Lewis*, 292 So.2d 216, 218-19 (La. 1974).  To determine whether a tortious act occurred within the scope of employment, Louisiana courts consider whether the act: (1) was primarily employment rooted; (2) was reasonably incidental to the performance of the employee's duties; (3) occurred on the employer's premises; and (4) occurred during the hours of employment.  *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 484 (5th Cir. 2002) (citing *Baumeister v. Plunkett*, 673 So.2d 994, 996-97 (La. 1996)).  All four of the factors need not be met in every case.  *White*, 419 F. App'x at 442.  Moreover, "that the *predominant* motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment."  *Baumeister*, 673 So.2d at 999 (quoting *Ermert v. Hartford Ins. Co.*, 559 So.2d 467, 476-77 (La. 1990)) (emphasis added).  As long as "the purpose of serving the master's business actuates the servant *to any*

*appreciable extent*, the master is subject to liability if the act is otherwise within the service." *Id.* (emphasis added).

Here, plaintiff alleges that the local VA defendants committed the torts of defamation and intentional infliction of emotional distress when they transmitted false information to OPM and FECA investigators about the reason for his termination.[30]  The Court finds that, even accepting plaintiff's allegations as true, all four of the scope-of-employment factors are satisfied. *Cf. Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (holding that the district court should not "resolve[] disputed facts dispositive of both subject matter jurisdiction and the merits of an FTCA claim on a 12(b)(1) motion").  First, when the local VA defendants allegedly told OPM and FECA administrators that plaintiff resigned in lieu of termination[31]—even if that information was false—the conduct was "employment rooted." *See White*, 419 F. App'x at 442 (finding that an employee's transmittal of an allegedly defamatory letter was within the scope of employment under Louisiana law because the letter was sent on official letterhead and signed in the employee's official capacity).  Second, that conduct was "reasonably incidental" to the performance of the local VA defendants' duties to inform investigators about

---

30      R. Doc. 1 at 12, 29, ¶¶ II, XXVI.
31      *Id.*; R. Doc. 62 at 7.

the reason that plaintiff's employment ended.  *See id.*; *LeBrane*, 292 So.2d at 218 (finding that a fight was "reasonably incidental to the performance of [a] supervisor's duties" to fire an employee).  Third and fourth, plaintiff has not alleged that the actions took place outside of the VA or working hours.

Even if the local VA defendants' "predominant motive" was retaliatory, their actions were "actuated" to an "appreciable extent" by the purpose of serving the VA—here, by transmitting information about the reasons for the end of plaintiff's employment.  *Baumeister*, 673 So.2d at 999; *White*, 419 F. App'x at 443 (finding that, even if some ulterior motives existed, an action is within the scope of employment if the employee is motivated "at least to an appreciable extent" by serving the employer).  Plaintiff does not contest that the local VA defendants were required to transmit this information, just the accuracy of the information. Accordingly, the Court finds that the local VA defendants acted in the scope of their employment at the VA when they transmitted the allegedly false information about the reasons for plaintiff's termination.

Plaintiff has failed to rebut the United States' Westfall certification and is not entitled even to limited discovery.  *See Bolton*, 946 F.3d at 261. Accordingly, the United States is substituted as party for the individual defendants, and the individual defendants must be dismissed.  *See*

*Rodriguez v. Sarabyn*, 129 F.3d 760, 764 ("If the individual defendants are found to have been acting in the scope of their employment, the United States is automatically substituted for the defendants, who are then dismissed from the action pursuant to the [Westfall Act.]").

## 2.  *Failure to Exhaust Administrative Remedies*

After substitution, an action subject to the Westfall Act proceeds as an action against the United States under the FTCA and is subject to the FTCA's "limitations and exceptions." 28 U.S.C. § 2679(d)(4). Under the FTCA, "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). This "requirement is a prerequisite to suit under the FTCA." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030 (5th Cir. 2011). Saunders has not presented his tort claims to any federal agency. Because Saunders has not satisfied the FTCA's "jurisdictional prerequisite," this Court must dismiss these claims for lack of subject matter jurisdiction. *See Barnes v.* Gittel, 650 F. App'x 236, 240 (5th Cir. 2016) (citing *Barber v. United States*, 642 F. App'x. 411, 413, (5th Cir. 2016)).

When a district court dismisses a claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it must do so

without prejudice. See *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol North America, Inc.*, 544 F. App'x 455, 456-57 (5th Cir. 2013) (finding dismissal with prejudice under Rule 12(b)(1) improper because this is "to disclaim jurisdiction and then exercise it").   Consequently, the Court dismisses plaintiff's tort claims without prejudice for lack of subject matter jurisdiction.

## B.    Breach of Contract Claims

The VA moves under Rule 12(b)(1) to dismiss plaintiff's breach of contract claims for lack of subject matter jurisdiction.  The VA argues that, under the Tucker Act, 28 U.S.C. § 1491(a)(1), subject matter jurisdiction lies exclusively in the Court of Federal Claims.[32]   Plaintiff asks the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a).[33]

The Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491.  The Little Tucker Act, 28 U.S.C. § 1346(a), confers exclusive jurisdiction upon the Court of Federal Claims for

---

[32]    R. Doc. 50-2 at 3.
[33]    R. Doc. 63 at 13.

breach of contract claims against the United States, where the amount in controversy exceeds $10,000. *See* 28 U.S.C. § 1346(a).

With the Tucker Act, the United States waived its sovereign immunity for claims under 28 U.S.C. §§ 1346(a)(2) and 1491(a). *Wilkerson v. United States*, 67 F.3d 112, 118-119 (5th Cir. 1995). In *Wilkerson*, the Fifth Circuit strictly construed this waiver and found that the Court of Claims has *exclusive* jurisdiction over Tucker Act claims exceeding $10,000. *Id.* (quoting *Ware v. United States*, 626 F.2d 1278, 1287 (5th Cir. 1980)). Consequently, the Fifth Circuit has "consistently refused to allow district courts to adjudicate issues which belong solely to the Court of Claims, *even though some other statute conferring jurisdiction would otherwise allow the district court to hear the case*." *Id.* (emphasis added); *see also Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 359-60 (5th Cir. 1987) ("[I]f we find that this suit falls within the exclusive jurisdiction of the Claims Court under the Tucker Act, our inquiry will be at an end . . . .").

To determine whether Saunders' breach of contract claim falls within the exclusive jurisdiction of the Court of Federal Claims, the Court asks whether the claim (1) sounds in breach of contract, (2) is against the United States and (3) whether the amount in controversy exceeds $10,000. *See Refaei v. McHugh*, 624 F. App'x 142, 148 (5th Cir. 2015) ("Under the Tucker

14

Act, the Court of Federal Claims has exclusive jurisdiction over claims sounding in breach of contract against the United States that exceed$10,000."). Here, Saunders' claim—that the VA breached his settlement agreement—on its face, "sounds in breach of contract." *See Patterson v. Spellings*, 249 Fed. App'x 993, 998 (5th Cir. 2007) (finding that the Court of Claims has exclusive jurisdiction over plaintiff's "single cause of action for breach of the settlement agreement"); *Charles v. McHugh*, 613 F. App'x 330, 333-34 (5th Cir. 2015) (collecting cases). Next, Saunders asserts his breach of contract claim against the Department of Veterans' Affairs, which is the United States for purposes of the Tucker Act. *See Amoco Prod. Co.*, 815 F.2d at 359 (holding that an action is against the United States where it is "against a federal agency . . . and any monetary judgment recovered would expend itself on the public treasury"). Finally, Saunders' prayer for damages, his allegations that the amount in controversy in the suit exceeds $75,000, and his failure to deny the VA's assertion that the claim exceeds $10,000, establish that the amount in controversy exceeds $10,000. *See Chichakli v. Szubin*, 546 F.3d 315, 317 (5th Cir. 2008) (considering plaintiff's allegations, the circumstances of the case, and "[plaintiff's] failure to dispute the Government's allegation that [its] claim is excess of $10,000" to find that the amount in controversy exceeds $10,000). Saunders breach of contract

claim clearly falls within the exclusive jurisdiction of the Court of Federal Claims.

Plaintiff argues that the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367.[34]   But, as the Fifth Circuit held in *Wilkerson*, a district court does not have jurisdiction under § 1367 to hear a Tucker Act claim because, "there is no waiver [of sovereign immunity] except to have the claims heard in the Court of Claims."  67 F.3d at 119.  As the court explained, "the doctrine of pendant jurisdiction cannot be used to waive the United States' sovereign immunity unless Congress specifically allows it."  *Id.* at 119 n.13.  *But see Patterson*, 249 F. App'x at 996 n.4 ("[W]e have no occasion to consider . . . [whether] a district court properly having jurisdiction over a Title VII claim could exercise ancillary jurisdiction over a breach of settlement claim.").  Plaintiff also argues that the Court should exercise supplemental jurisdiction in the interests of judicial efficiency because he brings his breach of contract claim with other claims.[35]   Plaintiff seeks to distinguish his case from authority the Government relies on, arguing that his complaint involves multiple alleged violations, and the Government's cases involve only a single claim for breach of contract.[36]   These arguments

---

[34]    R. Doc. 63 at 13.

[35]    *Id.* at 15.

[36]    *Id.*

are unavailing.  The *Wilkerson* court made clear that a district court lacks

jurisdiction to hear Tucker Act claims if there is no independent waiver of

sovereign immunity to allow these claims to be heard in federal district court.

67 F.3d at 118-19; *see also Charles*, 613 F. App'x at 334 ("Other circuits have

similarly concluded that the government's waiver of sovereign immunity for

Title VII claims does not extend to contract claims regarding settlement

agreements." (citing *Taylor v. Geithner*, 703 F.3d 328, 335 (6th Cir. 2013);

*Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007); *Lindstrom v.*

*United States*, 510 F.3d 1191, 1195 (10th Cir. 2007)).   Further, the Fifth

Circuit has found that a district court lacks jurisdiction over a Tucker Act

claim even where it has jurisdiction over Title VII discrimination claims.  *See*

*Rafaei*, 624 F. App'x at 147-49.  In *Rafaei*, the plaintiff brought a breach of

contract claim along with discrimination claims under Title VII and the Age

Discrimination in Employment Act ("ADEA").  *Id.* at 145.  The district court

dismissed the breach of contract claim with prejudice, concluding that the

claim was preempted.  *Id.*  Regarding the discrimination claims, the district

court granted summary judgment, dismissing the claims on the merits.  *Id.*

On appeal, the Fifth Circuit affirmed the district court's decision to dismiss

the discrimination claim on summary judgment but reversed on the breach

of contract claim.  *Id.* at 147-49.  It held that the district court lacked

jurisdiction over the breach of contract claim, reversed the dismissal on the merits, and remanded with instructions to transfer the claim to the Court of Federal Claims. *Id*. at 149. A similar result is warranted here.

Under 28 U.S.C. § 1631, "[w]henever a . . . court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed . . . ." The Court may therefore transfer plaintiff's breach of contract claim to the Court of Federal Claims, since it finds that the Court of Claims has exclusive jurisdiction over plaintiff's breach of contract claim. For the reasons discussed above, the Court finds that this requirement is satisfied. *See Dabney v. United States*, No. 17-1144, 2018 WL 3235658, at *5 (Fed. Cl. July 3, 2018) ("The Federal Circuit has held 'that Tucker Act jurisdiction may be exercised in a suit alleging breach of a Title VII settlement agreement.'" (quoting *Holmes v. United States*, 657 F.3d 1303, 1312 (Fed. Cir. 2011)).

For the foregoing reasons, the Court grants defendant's motion and orders the claim for breach of contract transferred to the Court of Federal Claims.

### C.    Title VII Claims

The VA also moves under Rule 12(b)(1) to dismiss plaintiff's Title VII claims for lack of subject matter jurisdiction.  It argues that the Title VII claims constitute "collateral attacks" on the DOL's determinations under FECA.[37]  The VA contends that these determinations are precluded from judicial review under 5 U.S.C. § 8128(b).[38]

FECA provides the exclusive remedy for personal injuries a federal employee sustains in the performance of his duties.  *See* 5 U.S.C. §§ 8102(a), 8116(c); *see White v. United States*, 143 F.3d 232, 234 (5th Cir. 1998) ("For injuries within its coverage, FECA's remedy is exclusive of any other remedy.").  The Secretary of Labor has authority to "administer and decide all questions arising under [FECA]." 5 U.S.C. § 8145.  This authority has been delegated to the Director of the OWCP.  20 C.F.R. § 10.1.  Actions that allow or deny FECA awards are "final and conclusive and not subject to review by a court of law."  *White*, 143 F.3d at 234 (citing 5 U.S.C. § 8128(b)).  Thus, when the OWCP makes a determination under FECA, the Court lacks authority to review the decision.

---

[37]    R. Doc. 55-2 at 6.

[38]    *Id.*

But, as the Third Circuit found in *Miller v. Bolger*, 802 F.2d 660, 667 (3d Cir. 1986), FECA and Title VII provide separate remedies for "distinct types of injuries." Consequently, FECA does not bar federal employees from suing their employers under anti-discrimination laws. *Id.* Numerous courts have followed *Miller*. *See Morris v. Roche*, 182 F. Supp. 2d 1260, 1274 (M.D. Ga. 2002) (collecting cases).

Nevertheless, in some circumstances, courts have found that Title VII claims are impermissible collateral attacks on the DOL's determinations. For example, the district court in *Almaguer v. White*, held that the plaintiff's Title VII claims were "direct challenges to compensation decisions made under FECA" and were barred as "collateral attacks" on the DOL's unreviewable decisions. No. 01-1103, 2002 WL 31396123, at *6 (W.D. Tex. Sept. 13, 2002); *see also Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998) (holding that "a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision" by bringing a claim under the Rehabilitation Act "when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision."). In *Almaguer*, the plaintiff alleged that her employer conspired *with the OWCP* to temporarily discontinue her workers' compensation benefits. *Almaguer*, 2002 WL 31396123, at *4. In the court's view, "the injuries for which plaintiff

seeks relief under Title VII . . . are derived *solely from a compensation decision made by the Secretary of Labor under FECA*." *Id.* (emphasis added). The court found that FECA deprived it of jurisdiction because it would be forced to review the DOL's determination. *Id.* This Court does not take issue with *Almageur*'s conclusion that a district court cannot review the Secretary of Labor's compensation decisions. Indeed, this is precisely what FECA itself precludes. *See* 5 U.S.C. § 8128(b).

But, unlike the plaintiff in *Almaguer*, Saunders is not directly challenging the OWCP's compensation decision. In adjudicating Saunders' Title VII claims, the Court need not review the FECA determinations. On December 5, 2017, the OWCP informed plaintiff that he would receive FECA benefits retroactively to June 1, 2005. Clearly, the OWCP concluded that plaintiff *was entitled to FECA benefits*. Plaintiff is not challenging this decision, nor is he challenging the amount or nature of the FECA award. *See Miller*, 802 F.2d at 666 (finding that plaintiffs did not attack FECA determination in subsequent suit where right to receive FECA benefits and amount of benefits were not at issue).

Instead, Saunders' Title VII claims are based on injuries resulting from the allegedly discriminatory conduct of defendants. In particular, plaintiff claims that defendants' retaliation and discrimination caused the delay in his

receipt of FECA benefits, which cost him more than $75,000 and caused him "untold mental stress, upset and damages."[39]  These injuries are "distinct" from the injury that led to his disability compensation.  *Id.* at 667.  Title VII, not FECA, provides the remedy for injuries resulting from discrimination. *Id.* at 663 ("Congress did not intend that recovery for tortious injury under FECA should preclude Title VII remedies for discrimination."). Consequently, FECA does not preclude the Court from exercising jurisdiction over plaintiff's Title VII claims.

This discussion of jurisdiction does not mean that plaintiff has adequately stated a claim for discrimination under Title VII on the merits. The only issue here is whether the Court has jurisdiction to hear Title VII claims.  Because the Court has found that it has jurisdiction, defendants' motion to dismiss under Rule 12(b)(1) must be denied.

---

[39]   R. Doc. 62 at 9-10.

## IV.   CONCLUSION

Accordingly, the Court GRANTS defendants' motion to substitute the United States as party and to dismiss plaintiff's tort claims.  Plaintiff's tort claims are DISMISSED WITHOUT PREJUDICE.  The Court ORDERS plaintiff's breach of contract claim transferred to the Court of Federal Claims. Finally, the Court DENIES defendants' motion to dismiss plaintiff's Title VII claims.

New Orleans, Louisiana, this __30th__ day of October, 2020.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE